13754

W. T. RAWLEIGH CO. v. BOWERS *ET AL.*

(172 S. E., 301)

*Mr. J. A. Mace,* for appellant.

*Messrs. Randolph Murdaugh* and *W. D. Connor,* for respondents,

January 11, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff is a corporation under the laws of the State of Illinois, and is engaged in the manufacture and sale of family medicines, flavoring extracts, soaps, spices, dyes, disinfectants, toilet preparations, etc. The defendants are residents of South Carolina. February 27, 1930, W. E. Bowers, Jr., entered into a contract with plaintiff for the purchase of some of its wares and merchandise, for which he agreed to pay as follows: "In full, for all goods purchased under this contract, also agrees to pay any balance due the seller at the date of the acceptance of this renewal contract for goods previously sold under any and all former contracts, by cash, or by installment payments satisfactory to the seller at invoice prices and according to the terms and conditions thereof, and subject to such cash discounts as may be shown in current discount sheets."

A. L. Bowers, E. G. Cone, and Henry W. Lightsey in writing guaranteed payment for any and all goods, wares, and merchandise sold said buyer "under the above foregoing contract, etc."

The defendant, W. E. Bowers, Jr., being indebted to plaintiff, action was brought against him and the guarantors of his contract. After the commencement of the action, Henry W. Lightsey died, and Mrs. Virginia H. Lightsey, executrix of his estate, was substituted in his stead.

The complaint alleged the contract, the guaranty thereof by the named guarantors, the sales to W. E. Bowers, Jr., and his indebtedness in the sum of $609.91, which sum was past due and unpaid after demand therefor.

W. E. Bowers, Jr., the principal in the contract, made no answer. Henry W. Lightsey, for answer, alleged: First, a general denial; second, that the obligation sued on was contracted in the transportation and sale of illicit liquors, in that the commodities and preparations sold by plaintiff to W. E. Bowers, Jr., contained more than 1 per centum of alcohol, and, which, if drunk to excess, will produce intoxication, and such articles were sold in violation of the laws of South Carolina and the act of Congress (27 USCA); third, that plaintiff and Bowers, Jr., without the knowledge or consent of defendant, altered and varied the contract, whereby Bowers was enabled to dispose of the goods without giving this defendant an opportunity to protect his rights, and thereby defendant was discharged of his liability as guarantor; fourth, that after shipping Bowers certain goods plaintiff refused to ship him any more, in violation of the terms of the contract, which prevented him from disposing of the goods already shipped advantageously and expeditiously; that this breach of the contract relieved defendant of his obligation as guarantor.

The defendants, E. G. Cone and A. L. Bowers, answer jointly. Their first and second defenses are similar to those of the same numbers set up by Lightsey. The third defense sets up failure of consideration. The fourth defense sets up payment. The fifth defense elaborates the third defense of Lightsey, and alleges that plaintiff, with intent to defraud these defendants as guarantors, urged, persuaded, and fraudulently induced W. E. Bowers, Jr., to dispose of said merchandise in any way and by any means he could, by selling it on credit to persons regardless of their financial responsibility, with the intent to thus dispose of the merchandise and hold these guarantors on their guaranty; that for these reasons these defendants are not liable for any indebtedness of W. E. Bowers, Jr., under the contract.

The case was heard by Judge Mann and a jury. At the conclusion of the introduction of testimony, counsel for plaintiff moved for a directed verdict for the whole amount sued for, and, if that motion was refused, then for the amount of $500.60, the amount due on a former contract and the payment of which the indorsers guaranteed.

His Honor granted the motions as to W. E. Bowers, Jr., and refused it as to the other defendants.

By direction of the Court the jury found for plaintiff against W. E. Bowers, Jr., the sum of $609.91, and in favor of the other defendants, the guarantors. A motion for new trial was refused, and this appeal followed.

There are eleven exceptions with numerous subdivisions; it is not necessary to decide these in detail, but all of them shall have consideration.

The two cardinal issues are those made by the pleas of the guarantors that they be released from their liability of guaranty because, first, the contract between plaintiff and W. E. Bowers, Jr., is for the sale of articles which contain more than 1 per centum of alcohol, and which, if drunk to excess, will produce intoxication, and that such transactions are in violation of the provisions of Chapter 20 of the Criminal Code of South Carolina of 1922 (now Chapter 86, Criminal Code 1932 [Section 1829 *et seq.*]) and the acts of Congress; and, second, that the plaintiff and W. E. Bowers, Jr., altered, modified, varied, and changed the terms of the contract without the knowledge or consent of the guarantors, and therefore the latter are released from their contract of guaranty.

First. It is undeniable that this was a transaction in interstate commerce. The plaintiff is a resident of Illinois and W. E. Bowers, Jr., a resident of South Carolina. The goods were delivered to the buyer f. o. b. Richmond, Va. It is expressly contracted that when the goods are so delivered they become the property of the buyer, W. E. Bowers, Jr.,

and the plaintiff herein, the seller, retains no right, title, interest, or control over said merchandise. There will be no disputation over the proposition that, this being a transaction in interstate commerce, it is governed by federal laws. There is uncontradicted proof that plaintiff has a permit from the United States government to use alcohol in preparations which require alcohol; that in certain preparations sold by plaintiff, such, for instance, as lemon extract, which contains 81 per cent. of alcohol, the per centum of alcohol is necessary to preserve the article in solution. Certainly then plaintiff violated no law of the United States in selling to W. E. Bowers, Jr., and it is equally clear that it violated no law of South Carolina, for it made no sale in this State. If W. E. Bowers, Jr., sold these articles for use as beverages, which, if drunk to excess, will produce intoxication, he may have subjected himself to prosecution, but that will not relieve these guarantors of their liability on this contract. It is due the young man, W. E. Bowers, Jr., to say that he distinctly disavows the suggestion that he bought these goods for the purpose of selling them to be used as beverages, as whisky is drunk, and he denies that he did sell them for such purpose. It is ventured to be said that every family grocery in the State buys and sells preparations of this nature just as this young man did. One of the principal witnesses for the contesting defendants testified that he did, and he is a man of the very best character and standing. So it was palpable error to hold and charge that, if the jury found "that the articles purchased were articles illegal for traffic, such as intoxicating beverages, as is prohibited by the law, they could not be held responsible for that. It is against the law to traffic in any beverage which contains more than one per centum of alcohol. It does not make any difference whether it is whiskey, or wine, or any kind of contraband which if taken to excess will produce intoxication, it is against the law; or to traffic in anything, that is against the law." How-

ever sound that charge may be as an abstract proposition of law, it has no application to the proven facts of this case.

Second. Has the contract been altered, modified, varied, or changed in any material manner? If so, and it was done without the knowledge and consent of the guarantors, they are released; otherwise they are still bound.

The alleged alteration and variation consists in the conduct of the plaintiff in advising W. E. Bowers, Jr., how to sell his goods; in advising him to sell them on credit. The contesting defendants allege that young Bowers was coerced, forced to sell his goods on credit in order to have them disposed of for the purpose of collecting from the guarantors. Plaintiff denies these allegations. What does the contract say?

"(5). It is mutually understood and agreed that this is a contract of buyer and seller, and that the buyer is not the agent or representative of the company for any purpose whatsoever, but is the sole owner and manager of his business, and that he expressly reserves the exclusive right to determine the price, terms and conditions upon which, and the place where, he will sell the merchandise he buys from the seller, it being mutually understood and agreed that when the seller delivers the merchandise f. o. b. to buyer, at any point of shipment, the merchandise becomes the property of the buyer and the seller retains no right, title, interest or control over said merchandise, it being mutually and fully understood that the buyer is in business for himself and that the seller does not undertake in any way to control buyer in the conduct of his business.

"(6). With the express understanding that it shall impose no legal restrictions whatsoever and that it shall not alter or modify the written terms or conditions of this contract, nor be considered as orders, directions, or instructions, or binding in any way upon the buyer and that it shall be considered only as advice and suggestions intended only to aid

the buyer in improving his sales, collections, and service to his customers (which advice or suggestions he may follow or not as he may choose) the seller will furnish buyer from time to time with Rawleigh Sales Service and Collection Methods, consisting of Rawleigh Weekly, Rawleigh Methods, and other books, bulletins, service, sales or collection letters, and other letters and literature; it being intended and mutually agreed that this contract shall be the sole and only binding agreement between the parties hereto, and that it shall not be changed or modified in any way or by any person except such change or modification shall be first reduced to writing, signed and agreed to by both parties and the seal of the seller thereunto affixed."

Certainly the contract was not altered when plaintiff sent Bowers "Rawleigh Weekly, Rawleigh Methods, and other books, bulletins, service, sales or collection letters, and other letters and literature." The contract in explicit terms gave them the right so do so. But it is contended that the letters the plaintiff wrote coerced and forced the defendant to put out his goods on credit. Unfortunately these letters were not produced, nor was plaintiff noticed to produce them or copies of them. Bowers says some one burnt them up. A careful perusal of the evidence given by W. E. Bowers, Jr., fails to show that he was coerced or forced by the "burnt up" letters to sell his goods on credit. We find the following in the record:

"Q. What did they write you and tell you about that book that advised you to sell on credit, Mr. Bowers?

"A. They told me to go by that book to put the goods out on credit, why I was not doing any business."

Certainly here was no coercion or force which would alter the contract. Bowers is advised to go by the book *provided for in the contract.* (Italics added.) Again:

"Q. Mr. Bowers, state whether you had put out a whole lot of this stuff on credit.

"A. Yes, sir.

"Q. On whose instructions did you put it out?

"A. *By the book from Rawleigh Company.*" (Italics added.)

Nowhere does this young man say that he was coerced or forced to put out goods on credit. He only says he was advised, and in one instance he says he was instructed, to do so. It is plain that he was under no obligation to accept advice or instruction from the Rawleigh Company. The merchandise was his; he could sell it in any way he chose. The contract expressly tells him *and his guarantors* that he is not bound to accept advice or instructions from the Rawleigh Company. The letters are burnt up; no books of account are in evidence to show how much merchandise was put out on credit and how much of that was collected. The testimony on behalf of plaintiff, a foreign corporation, was by deposition; therefore it was not possible for plaintiff, in reply, to contradict the testimony in relation to the letters said to have been burnt.

In the light of these circumstances, it was error to hold and charge the jury in this wise: "If it was the purpose of young Bowers when he bought this stuff from the Rawleigh Company to sell it for cash, or to sell it to people who were responsible financially, responsible within a reasonable time and to remit to the Rawleigh Company from time to time or within a reasonable time, the amount so realized thereby releasing him of his obligation and consequently releasing the endorsers of the obligation. They are bound if they knew it, and released as he made such remittances. If the Rawleigh Company knowing that brought any pressure to bear upon him to violate the terms of the contract, or by coercion, or inducing him to make sales out of harmony therewith, that is, coerced him to dispose of the stock on which endorsers had the right to rely and taking the goods and wares and disposing of them, and putting them beyond the

reach of the endorsers and still relying upon the obligation of the endorsers to the seller, that is, done without notice to the endorsers, then, that released them, and, they are not held to pay the debt of young Bowers, because the law will not allow a person to stand behind another man's back, when he has obligated himself to do something and make a new contract with a person who has been guaranteed, and still hold the guarantor responsible for the provisions of the contract for which he himself did not guarantee."

It was wholly immaterial what was the purpose with which young Bowers bought this stuff or as to how he would sell it—whether for cash or on credit. It was his; he could sell it as he pleased. The issue is, did the plaintiff and W. E. Bowers, Jr., or either of them, alter the contract, or "make a new contract," as the charge intimates, which discharged the guarantors? There is no evidence of any such variation or alteration or making of a new contract.

These defendants rely upon the case of *J. R. Watkins Company v. Stephens et al.*, 144 S. C., 125, 142 S. E., 245, in support of their position. That case is authority for leave to interpose the defense that the plaintiff *fraudulently* induced the principal to dispose of the goods in any way and by any means possible, either by selling them on credit without regard to the responsibility of the buyer, with intent to saddle responsibility on the guarantors. That case went up on appeal from an order refusing leave to amend the answer by alleging the charge. There is no evidence of the nature of the contract between the parties, and the case throws no light on the questions here involved.

It is urged that the contract was broken when the plaintiff terminated it and refused to ship Bowers any more goods. The contract expressly provides that either party may terminate the contract by written notice at any time.

This is a hard contract and one that does not commend itself. But these defendants are all men of intelligence and

apparently of business experience. There is no charge nor proof that they were induced to sign this contract by fraud, misrepresentation, or concealment. If they signed it improvidently, and without due care to ascertain the nature of its contents, they ought not now to appeal to the Court to relieve them from the results of their negligence.

W. E. Bowers, Jr., does not defend the action. In evidence he admits that he owes the whole amount claimed. Evidently he does not think that he has been coerced, forced, or otherwise imposed on. The transaction is not illegal as one dealing in illegal beverages; nor has it been altered or changed to the hurt of the guarantors.

It is the judgment of the Court that the judgment below be reversed; that the case be remanded to the Circuit Court with instructions to enter judgment for plaintiff against all the defendants for the sum of $609.91.

MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concurs.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur in result.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER: Under *W. T. Rawleigh Co. v. Johnson,* 139 S. C., 318, 137 S. E., 820, and *J. R. Watkins Co. v. Stephens,* 144 S. C., 125, 142 S. E., 245, we think that good defenses were pleaded in the case at bar. But we are of opinion, from an examination of the record, that under the evidence no issue of fact was made for the jury. We therefore concur in the result of the opinion of MR. JUSTICE BONHAM.